# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Cardiovascular Systems, Inc., | Case No. 0:18-cv-1253-SRN-KMM |
| Plaintiff, | |
| v. | **ORDER** |
| Cardio Flow, Inc., | |
| Defendant. | |

This case is before the Court on Plaintiff Cardiovascular Systems, Inc. ("CSI")'s Motion to Amend the Complaint. (ECF No. 95.) Defendant Cardio Flow, Inc. ("Cardio Flow") opposes the Motion. After careful consideration, the Court determines that CSI's Motion should be DENIED.

## I. Factual Background

CSI seeks to amend its Complaint to include a tortious interference with contract claim that it contends it learned about for the first time in a deposition taken on December 4th, six months after the deadline for amending pleadings set forth in the Scheduling Order.

CSI has maintained since the outset of the litigation that this is a breach of contract case. Specifically, CSI asserts that Cardio Flow breached a settlement agreement that was originally executed between CSI and Lela Nadirashvili in 2012. In that settlement agreement, CSI and Ms. Nadirashvili divided up the rights to certain rotational atherectomy device patents. CSI asserts that it was granted an exclusive right to practice rotational atherectomy devices employing "solid counterweights," a right that went even beyond the specific patents at issue, and that Ms. Nadirashvili received a portfolio of patents called the Nadirashvili Patent Portfolio. CSI alleges that after the agreement was entered, Ms. Nadirashvili assigned her rights under the

1

contract to Cardio Flow, including the Patent Portfolio and the obligation to abide by the prohibition on practicing rotational atherectomy devices using solid counterweights. CSI alleges that Cardio Flow is now developing an atherectomy device incorporating solid counterweights, which it asserts is a breach of the settlement agreement.

Cardio Flow, in contrast, argues that it is not bound by the terms of the settlement agreement, because it is not a party to that contract. Cardio Flow also disputes CSI's reading of the agreement as doing more than dividing existing patent rights between CSI and Ms. Nadirashvili.

## II.  Analysis

CSI now seeks to amend its Complaint to add an alternative theory of liability: tortious interference with contract. It argues that the settlement agreement required Ms. Nadirashvili to mandate that any assignee of her Patent Portfolio agree to be bound by the restrictive terms of that agreement. CSI further asserts that Cardio Flow knew of this requirement but orchestrated, through its founder and chairman Gary Petrucci, a scheme to induce Ms. Nadirashvili to transfer her rights without requiring Cardio Flow to accept CSI's alleged exclusive right to the practice of solid counterweight rotational atherectomy devices. CSI's motion to amend comes more than seven months after the May 31, 2019 deadline to amend the pleadings as set forth in this Court's Scheduling Order, and a month after the conclusion of fact discovery. (ECF Nos. 30, 76.)

### A.  Good Cause

Because CSI's motion to amend has been filed well outside the time permitted by the scheduling order, the Court requires a showing of good cause. Fed. R. Civ. P. 16(b)(4); *Ellingsworth v. Vermeer Manufacturing Co.*, -- F.3d ---, 2020 WL 615049 at *2 (8th Cir. 2020); *Kmak v. American Century Companies, Inc.*, 873 F.3d 1030, 1034 (8th Cir. 2017). "The primary measure of good cause is the movant's diligence." *Kmak*, 873 F.3d at 1034 (quoting *Harris v. FedEx Nat'l LTL, Inc.*, 760 F.3d 780, 786 (8th Cir.

2

2014).  Indeed, prejudice to the nonmoving party is rarely considered by the Courts unless diligence has first been demonstrated.  *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716–17 (8th Cir. 2008).

A Minnesota tortious interference with contract claim has several elements: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages."  *E-Shops Corp. v. U.S. Bank. Nat. Ass'n*, 678 F.3d 659, 664 (8th Cir 20120) (quoting *Furlev Sales & Assocs., Inc. v. N. Am. Auto Warehouse, Inc.*, 325 N.W.2d 20, 25 (Minn. 1982)).  CSI argues that before it took Mr. Petrucci's deposition in December 2019, it had no reason to believe that Cardio Flow knew about the settlement agreement's terms when it took the patents, as required by the second element.  The Court disagrees.

### 1. Mr. Petrucci's Deposition and CSI's Diligence

CSI argues that the delay in it learning of Cardio Flow's alleged tortious interference through the actions of Mr. Petrucci is attributable to Cardio Flow's intentional discovery misconduct.  Specifically, CSI avers that Cardio Flow improperly delayed document production, and CSI had no choice but to similarly delay its deposition of Mr. Petrucci.  Had it not been for Cardio Flow's slow-roll of production, CSI suggests it would have found the needed information for its tortious interference claim much earlier.  This argument does not carry the day for several reasons.

First, at a minimum, CSI could have pursued discovery other than Mr. Petrucci's deposition, such as interrogatories, requests for admission, or depositions of other witnesses in an effort to learn about Cardio Flow's understanding or knowledge of the settlement agreement.  Whether certain facts are known to a plaintiff moving to amend its complaint by the deadline to amend "is not the *sine qua non* under Rule 16.  Instead, the focus under Rule 16(b) is on the diligence with which the moving party attempted to comply with the scheduling order's deadlines"  *Target*

*Corp.*, 960 F. Supp. 2d at 1007. CSI spends a great deal of its brief arguing that Cardio Flow has dragged its feet in responding to document requests. However, CSI fails to explain why it did not ask Cardio Flow the questions that would have given it the evidence it needed to bring a tortious interference claim sooner. To succeed in demonstrating diligence, CSI must show the Court what it did to obtain the information it needed within the deadline. *Id.* It does not meet this burden.

The greatest example of information that CSI possessed ahead of the amendment deadline that would have triggered a diligent attorney to gather additional evidence is found in Cardio Flow's February 2019 response to one of CSI's interrogatories. Specifically, when CSI asked Cardio Flow to explain its position that it was not a party to the settlement agreement, Cardio Flow responded:

> Cardio Flow disputes that it is bound to the terms of the Settlement Agreement as if it were a party because Cardio Flow was not a party to the Settlement Agreement between Nadirashvili and CSI. After those parties entered into the Settlement Agreement, certain patent rights were assigned to Cardio Flow. The application of the Settlement Agreement to Cardio Flow is an issue that will need to be determined by the Court. **Cardio Flow did not agree to be bound by the alleged contract terms that CSI purports to assert in this case**.

(Allender Decl., ECF No. 98, Ex. G.) A diligent attorney could have chosen to seek more information in the form of interrogatories or requests for admission regarding the basis of Cardio Flow's disclaimer of the settlement agreement, including when it first learned about the agreement and what details it knew when Ms. Nadirashvili assigned her rights to Cardio Flow. However, there is nothing in the record before the Court to indicate that CSI pursued such a line of inquiry other than the delayed deposition of Mr. Petrucci. CSI does not explain why it could not have gotten the necessary discovery for pleading a tortious interference claim in some other manner prior to the deadline. *Target Corp.*, 960 F. Supp. 2d at 1007.

### 2. CSI's Knowledge Before the Amendment Deadline

Though a moving party's knowledge is not the determinative fact in a Rule 16 good cause inquiry, examining what CSI knew or should have known before the amendment deadline further highlights the lack of diligence in this case. CSI claims that it first learned of Mr. Petrucci's involvement in the Ms. Nadirashvili patents and Cardio Flow's knowledge of the terms of the settlement agreement after Mr. Petrucci's deposition in December 2019. But several facts demonstrate that CSI knew enough about Mr. Petrucci's involvement to bring this tortious interference claim sooner, or at least to investigate the claim ahead of the amendment deadline.

First, Cardio Flow expressly denied being bound by the terms of the settlement agreement in March 2019, two months before the amendment deadline, when it answered CSI's first Amended Complaint. (Answer, ECF No. 46, at ¶ 16.) It further informed CSI that "Cardio Flow did not agree to be bound by the alleged contract terms that CSI purports to assert in this case." (Declaration of Daniel Allender, ECF No. 98, Ex. G.) From these responses, CSI could have inferred that Cardio Flow knew about the settlement agreement; at a minimum, CSI could have pursued that line of questioning using additional interrogatories or other discovery tools to better understand what Cardio Flow knew and when.

Second, Cardio Flow produced the August 2012 assignment agreement between Cardio Flow and Ms. Nadirashvili in March 2019, two months before the amendment deadline. In the assignment agreement, the settlement agreement between CSI and Ms. Nadirashvili is explicitly referenced. (Allender Decl., ECF No. 98, Ex. C.) A reasonable inference could be made from this fact that Cardio Flow was aware of the settlement agreement and its terms five and a half years ago. It is difficult to believe that a reasonable attorney would recommend a client become a party to a contract that was contingent on a previous settlement agreement without also being familiar with the terms of the settlement agreement. By March 2019, CSI should have known that Cardio Flow had been aware of the settlement agreement for many years. Counsel could have sought discovery on this point then, amended the

5

complaint then, or sought an extension of the amendment deadline to gather evidence on this issue. They chose none of these options, instead waiting until near the very end of discovery to explore the matter in a deposition.

Indeed, the record before the Court demonstrates that CSI knew or should have known that Cardio Flow was aware of the terms of the settlement agreement long before the March disclosures. Several documents that CSI has in its own possession indicate that Mr. Petrucci was involved with Cardio Flow and with Ms. Nadirashvili well ahead of the 2012 settlement agreement. A letter sent from CSI's outside counsel to Mr. Petrucci in 2010 indicates that CSI's management and board of directors had considered a proposal by Mr. Petrucci related to the patents that were eventually addressed in the settlement agreement.[1] (ECF No. 114, Ex. 1.) And relevant text from the minutes of a October 20, 2010 meeting of the board of directors of CSI indicates that "Gary Petrucci, on behalf of Cardio Flow," proposed that CSI "assign to Cardio Flow all rights to the counterbalance technology in exchange for a dismissal of all litigation and a right of first refusal to later acquire Cardio Flow and its counterbalance technology rights." (ECF No. 116, Ex. A.)

Additionally, the 2012 settlement agreement between CSI and Ms. Nadirashvili specifically names Mr. Petrucci as an individual that Ms. Nadirashvili is permitted to partner with in exploiting her patent rights under the deal. (Allender Decl., ECF No. 98, Ex. B at 3 ¶ 7.) A reasonably diligent attorney could infer from this that Mr. Petrucci was well aware of the settlement agreement in which he, and he alone, was expressly named.

Finally, Ms. Nadirashvili's November 2012 assignment of her rights to Cardio Flow was publicly filed with the USPTO on December 31, 2012. (Declaration of

---

[1] CSI highlights that this letter was produced by Cardio Flow after the hearing on this matter, which would support its contention that Cardio Flow's delay of discovery is what prevented CSI from learning these facts sooner. While this production is very late, the fact that the letter originated with CSI's own counsel and discusses what occurred at CSI's own board meeting indicates to the Court that CSI had the information at issue it in its possession long before this litigation began.

6

Daniel R. Hall, ECF No. 104, Ex. B.) Shortly thereafter, patents began to issue from applications in the Nadirashvili Patent Portfolio, showing Cardio Flow as the assignee. (Hall Dec., ECF No. 104, Ex. C.) However, CSI had not received notice from Cardio Flow that it had agreed to be bound to the settlement agreement as if it were a party, despite CSI's allegations that Ms. Nadirashvili's assignment to Cardio Flow required such notice.

CSI argues that it had no obligation to monitor the Nadirashvili patents, and thus the fact that it did not notice the assignment in 2012 or early 2013 is not material to its diligence in this matter. However, this is immaterial to the question of CSI's diligence in bringing the motion to amend. The critical fact is that CSI knew when it originally brought this suit that Cardio Flow had been exercising rights under the patents originally given to Ms. Nadirashvili in the settlement without ever communicating anything to CSI (or anyone else) about being bound to the agreement. A diligent attorney could have inferred then that Cardio Flow had not properly agreed to be bound by the settlement agreement.

In sum, before the deadline to amend, CSI knew the following: (1) Cardio Flow believed it was not a party to the settlement agreement; (2) Cardio Flow knew about the settlement agreement's existence in 2012 when Ms. Nadirashvili assigned her rights to Cardio Flow; (3) Mr. Petrucci was attempting to gain access to the patents that eventually formed the basis for the settlement agreement as early as 2010; (4) Mr. Petrucci was named in the settlement agreement between CSI and Ms. Nadirashvili; and (5) Cardio Flow was assigned Ms. Nadirashvili's patent rights but had not agreed to be bound by the settlement agreement. To the extent that this factual reality could support a claim of tortious interference, CSI was aware of it well ahead of the amendment deadline.[2] A reasonably diligent attorney could have inferred that a

---

[2] It is noteworthy that the revelations at Mr. Petrucci's deposition are less dramatic than CSI suggests when it relies on those revelations to justify its very late effort to amend. The content of Mr. Petrucci's deposition does not paint him as a "puppet master guiding the 2012 litigation" as CSI alleges in the memorandum supporting its motion. (ECF No. 97 at 2.) Rather, a careful review of the deposition transcript

7

tortious interference claim might "have evidentiary support after a reasonable opportunity for further investigation or discovery," and therefore could have brought such a claim at that point. Fed. R. Civ. P. 11 (b)(3); *see Target Corp. v. LCH Pavement Consultants, LLC*, 960 F. Supp. 2d 999, 1008 (D. Minn. 2013).

CSI waited until the eve of summary judgment, several months after the amendment deadline, to move to amend its complaint. However, it has failed to demonstrate its diligence and the good cause necessary to permit amendment this late in the litigation. Therefore, the Court will not allow CSI to amend its complaint to add the requested tortious interference claim.

### B. Futility

Cardio Flow argues that, regardless of CSI's diligence, its proposed amendment is futile due to a statute of limitations concern. The Court would need to weigh numerous factual assertions in order to decide this issue, making such a determination improper for a 12(b)(6) analysis. But because the Court has already determined that CSI may not amend due to its lack of diligence, further exploration of the issue at this stage is unnecessary. *See Kmak*, 873 F.3d at 1035 (declining to address futility issues where good cause was determined not to exist).

---

provided by CSI shows that: Mr. Petrucci used to be on CSI's board (Allender Decl., ECF No. 98, Ex. H at 13:4–25); Mr. Petrucci wanted to start Cardio Flow in 2010 after he left CSI but was counseled by a friend and CSI's attorney that CSI would sue him (*id.* at 14:1–9); Mr. Petrucci introduced Ms. Nadirashvili to the law firm Fish and Richardson after she expressed her fears of losing her income after her husband, inventor Dr. Shturman, died (*id.* at 17:19–18:13, 22:8–23:15); Mr. Petrucci, a non-lawyer, believed that CSI had put their name on patents that belonged to Lela Nadirashvili (*id.* at 22:8–23:15, 28:24–29:7); he wanted to partner with Ms. Nadirashvili to use the patents he believed were hers to start Cardio Flow (*id.* at 22:8–23:15); and a lawyer from Fish called Mr. Petrucci to tell him that Ms. Nadirashvili's case against CSI had settled (*id.* at 34:9–35:8). None of these facts could fairly be characterized as the "smoking gun" that CSI argues it discovered Mr. Petrucci's deposition.

## III. Order

In sum, CSI has not demonstrated diligence, and has therefore failed to show that good cause exists under Federal Rule of Civil Procedure 16 to amend its complaint nine months after the deadline.

Accordingly, IT IS HEREBY ORDERED that CSI's Motion to Amend the Pleadings (ECF No. 95) is DENIED.

Date: February 27, 2020            *s/Katherine Menendez*
                                   Katherine Menendez
                                   United States Magistrate Judge