**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| Cardiovascular Systems, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Cardio Flow, Inc., <br><br> Defendant. | Case No. 18-cv-1253 (SRN/KMM) <br><br> **ORDER ON OBJECTIONS** |

Daniel Lewis Allender and Roman Silberfeld, Robins Kaplan LLP, 2049 Century Park E. Ste. 3400, Los Angeles, CA 90067-3208; Thomas F. Berndt, Robins Kaplan LLP, 800 LaSalle Ave., 2800 LaSalle Plaza, Minneapolis, MN 55402, for Plaintiff.

Daniel R. Hall, Joseph W. Anthony, and Joseph Richie, Anthony Ostlund Baer & Louwagie PA, 90 S. 7th St., Ste. 3600, Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

I.  **INTRODUCTION**

This matter is before the Court on the Objection [Doc. No. 123] of Plaintiff Cardiovascular Systems, Inc. ("CSI") to the February 27, 2020 Order (hereafter, "the Order") [Doc. No. 121] on Plaintiff's Motion to Amend the Amended Complaint [Doc. No. 95]. In the Order, Magistrate Judge Katherine Menendez denied CSI's motion. (Order at 9.) Based on a review of the record, and for the reasons set forth below, the Court overrules CSI's Objection and affirms the Order.

## II.     BACKGROUND

This case is a breach of contract action between two medical device manufacturers. (*See* Am. Compl. [Doc. No. 34] ¶¶ 22–27.) In addition to monetary damages, CSI seeks declaratory and injunctive relief against Cardio Flow. (*Id.* ¶¶ 28–38.) As the magistrate judge recounted in the Order, CSI alleges that Cardio Flow breached a 2012 settlement agreement, originally executed between CSI and Lela Nadirashvili. (Order at 1.) Pursuant to the settlement agreement, CSI and Ms. Nadirashvili agreed to divide ownership of certain patent portfolios involving rotational atherectomy devices.[1] (*Id.*) CSI asserts that it received an exclusive right to practice rotational atherectomy devices employing "solid counterweights"—a right that went beyond the specific patents at issue. (*Id.*) CSI contends that after the settlement, Ms. Nadirashvili assigned to Cardio Flow her interest in patent applications, and the agreement to abide by prohibitions against practicing rotational atherectomy devices using solid counterweights. (*Id.* at 1–2.) Further, CSI asserts that Cardio Flow is developing or is in the process of developing an atherectomy device that uses one or more solid counterweights, in violation of the settlement agreement. (*Id.* at 2.)

Cardio Flow, however, argues that it was not a party to the settlement agreement, and is not bound by its terms. (*Id.*) It further disputes CSI's interpretation of the contract as effectuating more than the division of contract rights between CSI and Ms. Nadirashvili. (*Id.*)

In the Order, the magistrate judge addressed CSI's Motion to Amend the Amended Complaint to add a claim of tortious interference with a contract. Although the deadline for

---

[1]     "Atherectomy devices clear arteries by grinding, aspirating, or cutting away plaque buildup." (Am. Compl. ¶ 6.)

filing such a motion was May 31, 2019, CSI filed its motion on January 15, 2020. Magistrate Judge Menendez summarized the parties' arguments, noting that CSI asserted that the settlement agreement required Ms. Nadirashvili to guarantee that any assignee of her patent portfolio agreed to be bound by the terms of the settlement agreement. (*Id.*) CSI further contended that Cardio Flow was aware of this obligation, but through its founder and chairman, Gary Petrucci, devised a scheme to induce Ms. Nadirashvili to transfer her rights without requiring Cardio Flow to accept CSI's corresponding right to exclusively practice solid counterweight rotational atherectomy devices.[2] (*Id.*) CSI asserted that at the December 4, 2019 deposition of Cardio Flow's founder and chairman, Gary Petrucci, it first learned of the factual basis for a claim of tortious interference with a contract. (*See* Pl.'s Mem. Supp. Mot. to Am. [Doc. No. 97] at 4.)

In response to CSI's Motion to Amend, Cardio Flow argued that the Court should deny the motion as untimely and futile. (Def.'s Opp'n to Mot. to Am. [Doc. No. 103] at 1.)

In the Order, Magistrate Judge Menendez observed that CSI's Motion to Amend was filed more than seven months past the May 31, 2019 deadline. (Order at 2) (citing Pretrial Sched. Order [Doc. No. 30] & Am. Pretrial Sched. Order [Doc. No. 76]). Applying the good-cause standard for amendments under Fed. R. Civ. P. 16(b)(4), she found that CSI had failed to demonstrate good cause. (*Id.* at 2–8.) Rejecting CSI's claim that its delay was attributable to Cardio Flow's intentional discovery misconduct, Magistrate Judge Menendez instead

---

[2] Petrucci had served as CSI's chairman and CEO prior to his departure in March 2010. (Allender Decl. [Doc. No. 124], Ex. H (Petrucci Dep. at 121).) He formed Cardio Flow in July 2010. (*Id.* at 128.)

found that CSI was not diligent in pursuing discovery related to its tortious interference theory, and it knew or should have known information prompting it to pursue such discovery in a timely fashion. (*Id.*) Because she found that CSI failed to demonstrate good cause, the magistrate judge declined to address Cardio Flow's additional argument that the proposed amendment should be denied on grounds of futility, due to the statute of limitations. (*Id.* at 8.)

This Objection followed. CSI argues that the magistrate judge's ruling is clearly erroneous and contrary to law for the following reasons: (1) the Order ignores evidence of CSI's diligence; (2) CSI initially lacked evidence of tortious interference; and (3) the amendment does not alter the scope of the case and Cardio Flow would suffer no prejudice if CSI were allowed to amend its pleading. (Obj. at 3–5.)

**III.   DISCUSSION**

   **A. Standard of Review**

In reviewing an order from a magistrate judge on nondispositive matters, such as a motion to amend a complaint, the standard of review "is extremely deferential." *Magee v. Trs. of the Hamline Univ., Minn.*, 957 F. Supp. 2d 1047, 1062 (D. Minn. 2013). The Court must set aside portions of an order that are "clearly erroneous or contrary to law."[3] 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. Proc. 72(a); Local Rule 72.2(a)(3). Such an order is "clearly erroneous" when, after a thorough review of the record, the "court is left with the definite and

---

[3] Where the magistrate judge's denial of leave to amend is based on futility, the Court's review is de novo. *Magee*, 957 F. Supp. 2d at 1062. Because Magistrate Judge Menendez did not rule on the basis of futility, the Court reviews her decision under the clearly erroneous/contrary to law standard.

4

firm conviction that a mistake has been committed." *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 556 (D. Minn. 2008) (quoting *Thorne v. Wyeth*, No. 06-cv-3123 (PAM/JJG), 2007 WL 1455989, at * 1 (D. Minn. May 15, 2007)). The order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (quoting *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 592 F. Supp. 2d 1087, 1093 (N.D. Iowa 2008)).

### B. Analysis

As Magistrate Judge Menendez properly observed, because CSI's Motion to Amend was filed outside the time permitted under the Scheduling Order, it was required to show good cause in order to receive leave to amend. Fed. R. Civ. P. 16(b)(4); *Ellingsworth v. Vermeer Mfg. Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020); *Kmak v. Am. Century Cos., Inc.*, 873 F.3d 1030, 1034 (8th Cir. 2017). "The primary measure of good cause is the movant's diligence." *Kmak*, 873 F.3d at 1034 (quoting *Harris v. FedEx Nat'l LTL, Inc.*, 760 F.3d 780, 786 (8th Cir. 2014)). In general, courts do not consider prejudice to the non-moving party if the moving party has not been diligent in meeting the court's scheduling deadlines. *Id.* (citing *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012)).

The magistrate judge's determination that CSI failed to demonstrate good cause is supported by the record. CSI faults the magistrate judge for overlooking its efforts to compel the production of discovery and for improperly focusing on "hypothetical" discovery that it could have sought. (Obj. at 3–4.) But the magistrate judge correctly found that "CSI could have pursued discovery other than Mr. Petrucci's deposition, such as interrogatories, requests for admission, or depositions of other witnesses in an effort to learn about Cardio Flow's

understanding or knowledge of the settlement agreement." (Order at 3.) For example, the magistrate judge pointed to a Cardio Flow interrogatory response that should have prompted a request for additional information about when Cardio Flow first learned about the settlement agreement, and the details that it possessed when Ms. Nadirashvili assigned her rights to Cardio Flow. (Id. at 4.) She noted that CSI, however, failed to "explain why it could not have gotten the necessary discovery for pleading a tortious interference claim in some other manner prior to the deadline." (*Id.*) (citing *Target Corp. v. LCH Pavement Consultants, LLC*, 960 F. Supp. 2d 999, 1007 (D. Minn. 2013). The Court assigns no error to the magistrate judge's findings in this regard.

CSI also argues that Magistrate Judge Menendez "wrongly [found] that CSI should have filed its tortious interference claim at the outset." (Obj. at 4.) It contends that it could not have alleged such a claim without a good-faith basis for doing so, as it would have otherwise violated Fed. R. Civ. P. 11. (*Id.*) But Magistrate Judge Menendez did not find that CSI should have asserted a tortious interference claim at the outset of the case. Rather, she highlighted evidence of CSI's knowledge of Mr. Petrucci's involvement, sufficient for CSI to have brought a tortious interference claim "sooner, or at least to investigate the claim ahead of the amendment deadline." (Order at 5.) Her finding in this regard was not clearly erroneous, nor contrary to law. When evaluating good cause, courts may consider steps counsel should have reasonably undertaken in light of the facts and posture of the case. *See, e.g., In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 438 (8th Cir. 1999) (finding that plaintiffs failed to show good cause to amend complaint where dismissal of first amended complaint should have alerted them to certain pleading deficiencies much earlier).

Magistrate Judge Menendez identified evidence that should have prompted CSI to bring a tortious interference claim sooner, or to explore the claim prior to the expiration of the deadline. First, she noted that in Cardio Flow's March 2019 Answer to the Amended Complaint, filed two months before the expiration of the amendment deadline, Cardio Flow expressly denied that it was bound by the settlement agreement. (Order at 5) (citing Answer to Am. Compl. [Doc. No. 46] ¶ 16). And one month earlier, in response to Plaintiff's interrogatories, Cardio Flow "dispute[d] that it [was] bound to the terms of the Settlement Agreement as if it were a party," and "did not agree to be bound by the alleged contract terms that CSI purports to assert in this case." (*Id.*) (citing Allender Decl. [Doc. No. 98], Ex. G (Def.'s Resp. to Pl.'s Interrogs.) at Interrog. Resp. 1 & 2). The magistrate judge did not clearly err in finding, from these pleadings, that "CSI could have inferred that Cardio Flow knew about the settlement agreement," or, "at a minimum, CSI could have pursued that line of questioning using additional interrogatories or other discovery tools to better understand what Cardio Flow knew and when." (*Id.*) Nor were these findings contrary to law.

Second, the magistrate judge noted that in March 2019—again, prior to the expiration of the amendment deadline—Cardio Flow produced the August 2012 assignment agreement between it and Ms. Nadirashvili. (*Id.*) The assignment agreement expressly referenced the settlement agreement between CSI and Ms. Nadirashvili. (*Id.*) Thus, the magistrate judge found:

> A reasonable inference could be made from this fact that Cardio Flow was aware of the settlement agreement and its terms five and a half years ago. It is difficult to believe that a reasonable attorney would recommend a client become a party to a contract that was contingent on a previous settlement agreement without also being familiar with the terms of the settlement

7

agreement. By March 2019, CSI should have known that Cardio Flow had been aware of the settlement agreement for many years. Counsel could have sought discovery on this point then, amended the complaint then, or sought an extension of the amendment deadline to gather evidence on this issue. They chose none of these options, instead waiting until near the very end of discovery to explore the matter in a deposition.

(*Id.* at 5–6.)

Third, Magistrate Judge Menendez pointed to other record evidence showing that CSI knew or should have known—even earlier than the February and March 2019 disclosures—that Cardio Flow was aware of the terms of the settlement agreement. (*Id.* at 6.) She noted that several documents in CSI's possession supported this inference. For example, a letter sent from CSI's own outside counsel to Mr. Petrucci in 2010 indicated that CSI's management and board had considered a proposal by Mr. Petrucci related to the patents that were eventually addressed in the settlement agreement.[4] (*Id.*)  In addition, the minutes of an October 20, 2010 CSI board of directors meeting noted that "Gary Petrucci, on behalf of Cardio Flow," proposed that CSI "assign to Cardio Flow all rights to the counterbalance technology in exchange for a dismissal of all litigation and a right of first refusal to later acquire Cardio Flow and its counterbalance technology rights." (*Id.*)

Magistrate Judge Menendez further noted that the 2012 settlement agreement between CSI and Ms. Nadirashvili "specifically names Mr. Petrucci as an individual that Ms.

---

[4] In its Objection, CSI argues that Magistrate Judge Menendez's Order improperly "rests on" this letter. (Obj. at 17–18.) It further states that Cardio Flow only produced the letter "the day after the hearing on CSI's motion." (*Id.*) While CSI may not have known that the letter, written years earlier, existed, it nevertheless came from CSI's own outside counsel. Moreover, the magistrate judge relied on several forms of evidence, not the letter alone.

Nadirashvili is permitted to partner with in exploiting her patent rights under the deal." (*Id.*) Given this evidence in the record, it was not error, nor contrary to law, for the magistrate judge to conclude that "[a] reasonably diligent attorney could infer from this that Mr. Petrucci was well aware of the settlement agreement in which he, and he alone, was expressly named." (*Id.*)

Finally, the magistrate judge noted that Ms. Nadirashvili's November 2012 assignment of her patent rights to Cardio Flow was publicly filed with the USPTO on December 31, 2012. (*Id.*) Not long after, patents issued from applications in the Nadirashvili patent portfolio, listing Cardio Flow as the assignee. (*Id.* at 7.) At that time, CSI did not receive notice from Cardio Flow stating that Cardio Flow agreed to be bound to the settlement agreement as if it were a party, although CSI alleges that Ms. Nadirashvili's assignment to Cardio Flow required such notice. (*Id.*)

Magistrate Judge Menendez found that all of this evidence supplied the following information to CSI, from which it could have brought a tortious interference claim or sought further discovery in this regard:

> (1) Cardio Flow believed it was not a party to the settlement agreement; (2) Cardio Flow knew about the settlement agreement's existence in 2012 when Ms. Nadirashvili assigned her rights to Cardio Flow; (3) Mr. Petrucci was attempting to gain access to the patents that eventually formed the basis for the settlement agreement as early as 2010; (4) Mr. Petrucci was named in the settlement agreement between CSI and Ms. Nadirashvili; and (5) Cardio Flow was assigned Ms. Nadirashvili's patent rights but had not agreed to be bound by the settlement agreement.

(*Id.*)

Moreover, the magistrate judge noted that any "revelations" at Petrucci's deposition

9

were "less dramatic" than CSI suggested, and did not justify CSI's late effort to amend. (*Id.* at 7 n.2.)  Magistrate Judge Menendez found that the content of Petrucci's testimony did not portray him as a "'puppet master guiding the 2012 litigation,'" as CSI suggested. (*Id.*)  Rather, she found his testimony elicited the following facts—none of which could be characterized as a "smoking gun":  (1) he used to be on CSI's board; (2) he wanted to start Cardio Flow in 2010 after he left CSI, but was counseled by a friend and CSI's attorney that CSI would sue him; (3) he introduced Ms. Nadirashvili to the law firm Fish & Richardson after she expressed fears about losing her income after her husband died; (4) he believed that CSI had put their name on patents that belonged to Ms. Nadirashvili; (5) he wanted to partner with her to use the patents that he believed were hers to start Cardio Flow; and (6) a lawyer from Fish and Richardson called Petrucci to tell him that Ms. Nadirashvili's case against CSI had settled. (*Id.*) (citing Allender Decl., Ex. H (Petrucci Dep.) at 13–14, 17–18, 22–23, 28–29, 34–35.) The Court finds no clear error in the magistrate judge's findings with respect to the significance of Petrucci's testimony or any new evidence contained therein.

As to CSI's argument that it had no reason to believe Cardio Flow would promptly respond to further discovery, (Obj. at 4), CSI could have propounded the discovery, brought a motion to compel, or sought an extension of the schedule.  Thus, regardless of Cardio Flow's alleged delay in responding to prior discovery requests, for which CSI lays the blame for its untimely motion to amend, (Obj. at 3), Magistrate Judge Menendez did not clearly err in concluding that "[t]o the extent that this factual reality could support a claim of tortious interference, CSI was aware of it well ahead of the amendment deadline."  (Order at 7.) Further support for this conclusion is found in CSI's Objection, in which it acknowledges that

it "explored the possibility that it had a tortious interference claim" as early as December 2018. (Obj. at 3.)  Thus, it was not clear error for the magistrate judge to conclude that a reasonably diligent attorney "could have inferred that a tortious interference claim might have 'evidentiary support after a reasonable opportunity for further investigation or discovery,' and therefore could have bought such a claim at that point," without violating Rule 11. (Order at 7–8) (quoting Fed. R. Civ. P. 11(b)(3)).

Finally, CSI argues that the magistrate judge applied the wrong legal standard, arguing that under Fed. R. Civ. P. 15(b), parties should be permitted to amend a pleading even during trial. (Obj. at 5.)  But Rule 15(b) refers to amendments that are based on objections at trial, or for issues tried by consent, Fed. R. Civ. P. 15(b)(1)-(2), neither of which apply here. Rather, the Eighth Circuit has held that "[w]hen a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008).  In fact, "[t]o permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) 'would render scheduling orders meaningless and effectively . . . read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.'" *Id.* (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)).

In sum, the Court finds no clear error in Magistrate Judge Menendez's finding of a lack of good cause for permitting CSI to amend its pleading.  Because the magistrate judge found a lack of diligence on CSI's part, she was not required to further consider the issue of prejudice to the non-moving party.  *Kmak*, 873 F.3d at 1034.  And, because Magistrate Judge Menendez found that CSI failed to demonstrate good cause, she properly declined to address

Cardio Flow's other argument in opposition—that CSI's proposed claim would be futile. Her rulings in the Order were neither clearly erroneous nor contrary to law. Accordingly, for all the foregoing reasons, the Court overrules CSI's Objection and affirms the Order.

Based upon the foregoing, and all the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that

1. CSI's Objection [Doc. No. 123] to the February 27, 2020 Order on Plaintiff's Motion to Amend is **OVERRULED**; and

2. Magistrate Judge Menendez's Order of February 27, 2020 [Doc. No. 121] is **AFFIRMED**;

Dated: April 17, 2020

s/Susan Richard Nelson  
SUSAN RICHARD NELSON  
United States District Judge
