## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Cardiovascular Systems, Inc., | Case No. 18-CV-1253 (SRN/KMM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Cardio Flow, Inc., | |
| Defendant. | |

Daniel L. Allender and Roman M. Silberfeld, Robins Kaplan LLP, 2049 Century Park East, Suite 3400, Los Angeles, CA 90067; Thomas F. Berndt, Robins Kaplan LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402, for Plaintiff.

Joseph W. Anthony and Daniel R. Hall, Anthony Ostlund Baer & Louwagie PA, 90 South Seventh Street, Suite 3600, Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter comes before the Court on Plaintiff Cardiovascular Systems, Inc.'s ("CSI") Motion for Partial Summary Judgment [Doc. No. 137], Defendant Cardio Flow, Inc.'s Motion for Summary Judgment [Doc. No. 142], Cardio Flow's first Motion to Strike and for Sanctions [Doc. No. 161], and Cardio Flow's second Motion to Strike and for Sanctions [Doc. No. 193]. For the reasons set forth below, the Court **DENIES** CSI's Motion for Partial Summary Judgment, **GRANTS** Cardio Flow's Motion for Summary Judgment, and **DENIES as moot in part** and **DENIES in part** Cardio Flow's Motions to Strike and for Sanctions.

In 2012, CSI and Ms. Lela Nadirashvili, the widow of CSI's founder, Dr. Leonid Shturman, resolved then pending patent litigation over the ownership of certain patents related to Dr. Shturman's former work at CSI, by way of a Settlement Agreement, which is the subject of this breach of contract action. That Settlement Agreement allocated the disputed patents and patent applications between the parties and, relevant to this action, *inter alia*, granted CSI an exclusive license under the "Nadirashvili Patent Portfolio to make, have made, use, offer to sell, sell and import rotational atherectomy devices or methods utilizing Solid Counterweights." Subsequently, Nadirashvili assigned her rights to the patents in the Nadirashvili Patent Portfolio to Cardio Flow, the defendant in this case.

The salient issue in this case is whether CSI can enforce the terms of that Settlement Agreement against Cardio Flow, a non-signatory to that Agreement, by way of a breach of contract action. As the Court explains further *infra*, because there is no legal basis on which to enforce the terms of the Settlement Agreement against Cardio Flow, CSI's breach of contract claim fails. Nonetheless, the exclusive license, to certain patents in the Nadirashvili Patent Portfolio, granted to CSI under the Settlement Agreement, runs with the patents. Accordingly, should CSI determine, in good faith, that Cardio Flow infringes any of those patents, it is free to seek a remedy in a separate lawsuit for patent infringement.

## I.    BACKGROUND

### A.  The Parties

The parties to this lawsuit are competing medical device companies, targeting the market for orbital atherectomy devices. (Hall Decl. in Support of Motion for Summary Judgment [Doc. No. 145] Ex. 2; Sealed Allender Decl. in Op. to Motion for Summary

Judgment [Doc. No. 152] Ex. M.) Orbital atherectomy devices are used to remove built-up plaque in arteries. (Hall Decl. in Support of Motion for Summary Judgment [Doc. No. 145] Ex. 2.) CSI is a medical device company incorporated in Delaware, with its principal place of business in Minnesota. (*Id.*) Cardio Flow is also a Delaware corporation, with its principal place of business in Minnesota. (Sealed Allender Decl. in Op. to Motion for Summary Judgment [Doc. No. 152] Ex. M.) Cardio Flow was organized as a corporation in 2010. (Allender Decl. in Support of Motion for Partial Summary Judgment [Doc. No. 140] Ex. F, Petrucci Dep. at 17.)

### B.  The Settlement Agreement Between CSI and Nadirashvili

In 2012, Nadirashvili brought a declaratory judgment action against CSI to resolve the ownership of certain patents and patent applications filed by her late husband, Dr. Leonid Shturman. (*See* Hall Decl. in Support of Motion for Summary Judgment [Doc. No. 145] Ex. 6.) Nadirashvili and CSI resolved this litigation by entering into the Settlement Agreement. (*See id.* at Ex. 1 (hereinafter, "Settlement Agreement").)

Under the Settlement Agreement, Nadirashvili and CSI divided the patents and patent applications at issue in the lawsuit into two portfolios: (1) the Nadirashvili Patent Portfolio, found at Schedule 1 to the Settlement Agreement; and (2) the CSI Patent Portfolio, found at Schedule 2 to the Settlement Agreement. (*See id.*) Nadirashvili assigned any interest she had in the patents and patent applications within the CSI Patent Portfolio to CSI, and CSI assigned any interest it had in the patents and patent applications within the Nadirashvili Patent Portfolio to Nadirashvili. (*Id.* § 2.) Both sides affirmed that their assignments "shall be free of any liens or encumbrances." (*Id.*)

Nadirashvili and CSI also exchanged exclusive licenses with regard to certain devices or methods claimed under each other's patent portfolio. (*Id.* § 3.) Nadirashvili granted to CSI a "worldwide, royalty-free, paid-up, irrevocable exclusive right and license under the Nadirashvili Patent Portfolio to make, have made, use, offer to sell, sell and import rotational atherectomy devices or methods utilizing Solid Counterweights." (*Id.* § 3(A).) This license did "not include any rights to practice any device or method that utilize counterweights other than Solid Counterweights or any other technology in the Nadirashvili Patent Portfolio." (*Id.*) Section 3(A) further clarified that "a device that includes both Solid Counterweights and other technology claimed in the Nadirashvili Patent Portfolio that is not fully disclosed in the CSI Patent Portfolio will not be licensed." (*Id.*)

CSI's license to Nadirashvili was similar in form. (*See id.* § 3(B).) CSI granted to Nadirashvili a "worldwide, royalty-free, paid-up, irrevocable exclusive right and license under the CSI Patent Portfolio to make, have made, use, offer to sell, sell and import rotational atherectomy devices or methods utilizing Fluid Inflatable Counterweights." (*Id.*) This license did "not include any right to practice any device or method that utilizes one or more Solid Counterweights." (*Id.*)

Section 7 of the Settlement Agreement provided that Nadirashvili could partner with an individual or entity to develop the Nadirashvili Patent Portfolio. (*Id.* § 7.) It provided in full as follows:

> Nadirashvili Partner. Nadirashvili may partner (which may include the formation of an entity to own the Nadirashvili Patent Portfolio or the sale of the Nadirashvili Patent Portfolio to a person or entity) with any individual or

entity to develop the Nadirashvili Patent Portfolio, including Gary Petrucci. However, CSI reserves all rights available to it under the law to pursue any and all claims arising out of or based on the actions of Nadirashvili, Petrucci or any other individual or entity, including without limitation claims for the use or disclosure of any of CSI's confidential, trade secret, and/or proprietary information; for any tortious activity directed at CSI; and for breach of any contractual and/or fiduciary duties owed to CSI. CSI acknowledges that it would not breach any contractual or fiduciary duties for Petrucci to enter into a business transaction with Nadirashvili for the purpose of developing and commercializing the technology of the Nadirashvili Patent Portfolio as long as no confidential, trade secret, or other proprietary information of CSI is used or disclosed before, during or after the transaction.

(*Id.*)

The Settlement Agreement further described whether and under what circumstances the parties could assign or transfer their rights under the Settlement Agreement. (*Id.* § 10.) The full text is as follows:

Assignment or Transfer. The rights, obligations and privileges granted to the parties in this Settlement Agreement are personal to the parties and may not be assigned or transferred by a party without the written consent of the other party. The preceding sentence notwithstanding, either party may assign, without the consent of the other party, this Settlement Agreement and the rights, obligation and privileges herein in conjunction with a sale or transfer of the respective party's Patent Portfolio to a third party who has agreed, in writing promptly delivered to the other party, to be bound to this Agreement as if it were a party.

(*Id.*)

## C.  The Patent Assignment from Nadirashvili to Cardio Flow

Later in 2012, after Nadirashvili and CSI executed the Settlement Agreement, Nadirashvili entered into an assignment agreement with Cardio Flow. (*See* Hall Decl. in Support of Motion for Summary Judgment [Doc. No. 145] Ex. 10.) Under this agreement,

Nadirashvili assigned to Cardio Flow all of the patent interests comprising the Nadirashvili Patent Portfolio that she acquired by virtue of the Settlement Agreement. (*Id.*) In exchange for the patent interests, Nadirashvili and Petrucci agreed that Nadirashvili would receive shares of Cardio Flow and two monetary payments. (*Id.*) There is no evidence of record that, in connection with that assignment, Cardio Flow agreed to be bound by the terms of the Settlement Agreement.

### D.  The Current Litigation

On April 6, 2018, CSI sued Cardio Flow. (*See* Notice of Removal [Doc. No. 1] Ex. A, Summons and Complaint.) Under the operative complaint, CSI alleges three causes of action against Cardio Flow. (*See* Am. Compl. [Doc. No. 34].) First, CSI alleges breach of contract, contending that, by virtue of the assignment of the Nadirashvili Patent Portfolio to Cardio Flow, Cardio Flow became bound by the terms of the Settlement Agreement as if it were a party thereto and then breached those terms by developing an atherectomy device that uses solid counterweights and by prosecuting patents that constructively practice solid counterweights. (*Id.* ¶¶ 22-27.) Second, CSI seeks a declaratory judgment, declaring that CSI is the owner of several counterweight patents that it believes Cardio Flow wrongly claims to own. (*Id.* ¶¶ 28-34.) Third, CSI seeks a permanent injunction enjoining Cardio Flow from developing an atherectomy device that uses solid counterweights and from filing or prosecuting applications that constructively practice solid counterweights. (*Id.* ¶¶ 35-38.)

6

## II.    DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material'" if it may affect the outcome of the lawsuit. *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016). Likewise, an issue of material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The moving party bears the burden of establishing a lack of any genuine issue of material fact in dispute, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), and the Court must view the evidence and any reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

Before analyzing the threshold issue of whether Cardio Flow is bound by the terms of the Settlement Agreement, it is crucial to understand what CSI acquired through Section 3(A) of Settlement Agreement. It is also important to understand the parties' competing views of Section 10.

### B.  The Settlement Agreement

The interpretation of unambiguous contractual language is a question of law for the Court. *See Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 913 N.W.2d 687, 692 (Minn. 2018). Indeed, if a contract is unambiguous, "no external evidence can be admitted

to contradict, explain, or supplement the terms contained therein." *Qwinstar Corp. v. Anthony*, 882 F.3d 748, 753 (8th Cir. 2018), *as amended* (Feb. 26, 2018)). By contrast, if the Court determines that contractual language is ambiguous, the interpretation of that language, and the accompanying issue of the parties' intent, "becomes a question of fact for the jury." *Staffing Specifix*, 913 N.W.2d at 692. It is well established, however, that a "contract's terms are not ambiguous simply because the parties' interpretations differ." *Id.* Indeed, as the Eighth Circuit has noted (when interpreting Minnesota law), courts must "fastidiously guard against the invitation to create ambiguities where none exist," and must endeavor to interpret words in a contract in accordance with their "plain and ordinary meaning." *In re SRC Corp.*, 545 F.3d 661, 666 (8th Cir. 2008) (internal quotations and citations omitted).

### 1.     Section 3(A) of the Settlement Agreement

Section 3(A) of the Settlement Agreement granted to CSI a

worldwide, royalty-free, paid-up, irrevocable exclusive right and license under the Nadirashvili Patent Portfolio to make, have made, use, offer to sell, sell and import rotational atherectomy devices or methods utilizing Solid Counterweights. The license granted in this Agreement does not include any rights to practice any device or method that utilize counterweights other than Solid Counterweights or any other technology in the Nadirashvili Patent Portfolio. To be clear, a device that includes both Solid Counterweights and other technology claimed in the Nadirashvili Patent Portfolio that is not fully disclosed in the CSI Patent Portfolio will not be licensed.

(Settlement Agreement § 3(A).)

CSI and Cardio Flow dispute precisely what Nadirashvili granted to CSI through Section 3(A). Cardio Flow argues that, through Section 3(A), Nadirashvili only granted to

8

CSI an exclusive license to specific patent rights under the Nadirashvili Patent Portfolio. In contrast, CSI contends that Nadirashvili granted to CSI two separate rights: (1) an "exclusive right … to make, have made, use, offer to sell, sell and import rotational atherectomy devices or methods utilizing Solid Counterweights"; and (2) a "license under the Nadirashvili Patent Portfolio to make, have made, use, offer to sell, sell and import rotational atherectomy devices or methods utilizing Solid Counterweights." (Pl.'s Mem. in Op. to Motion for Summary Judgment [Doc. No. 150] at 30-31.) According to CSI, the phrase "under the Nadirashvili Patent Portfolio" in Section 3(A) only modifies the word "license," not the phrase "exclusive right."

Courts have long understood that a grant of an "exclusive right and license" only creates one obligation in the context of a patent license. *See, e.g.*, *Waterman v. Mackenzie*, 138 U.S. 252, 257 (1891) (a "sole and exclusive right and license" was a "mere license"); *Deitel v. Chisholm*, 42 F.2d 172, 173 (2d Cir. 1930) (person with "exclusive right and license" was an "exclusive licensee"); *see also Murphey v. TPS Enterprises*, 296 F. App'x 24, 25 (Fed. Cir. 2008) (using the phrase "exclusive right and license" in an exclusive licensing agreement); *W.L. Gore & Assocs., Inc. v. AGA Med. Corp.*, No. CV 12-827 (JNE/JSM), 2013 WL 12149249, at *1 (D. Minn. Apr. 22, 2013) (using the phrase "exclusive right and license" in a licensing agreement).

Indeed, the second and third sentences of Section 3(A) make clear that Nadirashvili only granted a license. In the second sentence, Section 3(A) discusses "[t]he license granted in this Agreement …." (*See* Settlement Agreement § 3(A).) In the third sentence, Section 3(A) discusses technology that "will not be licensed." (*See id.*) Furthermore, as Cardio

9

Flow notes, many form patent licenses use the language "right and license." (*See* Supp. Hall Decl. in Support of Motion for Summary Judgment [Doc. No. 174] Exs. 25-28.) Moreover, CSI offers no legal authority that would justify departing from courts' longstanding interpretation of the phrase "exclusive right and license." Accordingly, CSI's "exclusive right and license" is merely an exclusive license, and there is no other reasonable construction of those plain terms.

Additionally, the plain language of Section 3(A) dictates that CSI's "exclusive right and license" is limited by the phrase "under the Nadirashvili Patent Portfolio." "A contract must be interpreted in a way that gives all of its provisions meaning." *Baker v. Best Buy Stores, LP*, 812 N.W.2d 177, 180 (Minn. Ct. App. 2012) (quoting *Current Tech. Concepts v. Irie Enters.*, 530 N.W.2d 539, 543 (Minn. 1995)). The only reasonable way to construe Section 3(A) is to conclude that the phrase "under the Nadirashvili Patent Portfolio" modifies "exclusive right and license." In other words, in Section 3(A), Nadirashvili granted to CSI an exclusive license to certain patent rights under the Nadirashvili Patent Portfolio.[1]

---

[1] Cardio Flow argues that if the Court construed Section 3(A) as granting CSI an exclusive right to practice solid counterweights in general, such an agreement would violate antitrust law. Cardio Flow contends that a broad restrictive covenant that divides the marketplace for atherectomy devices, without regard to patents, would be a *per se* violation of U.S. antitrust laws. (*See* Def.'s Mem. in Support of Motion for Summary Judgment [Doc. No. 144] at 34-37.) However, in light of the fact that the Court finds that CSI only acquired an exclusive license through Section 3(A), the Court need not address the parties' antitrust arguments.

## 2.    Section 10 of the Settlement Agreement

CSI and Cardio Flow further disagree as to the proper interpretation of Section 10, which provides that

> The rights, obligations and privileges granted to the parties in this Settlement Agreement are personal to the parties and may not be assigned or transferred by a party without the written consent of the other party. The preceding sentence notwithstanding, either party may assign, without the consent of the other party, this Settlement Agreement and the rights, obligation and privileges herein in conjunction with a sale or transfer of the respective party's Patent Portfolio to a third party who has agreed, in writing promptly delivered to the other party, to be bound to this Agreement as if it were a party.

(Settlement Agreement § 10.)

Cardio Flow argues that the phrase "may assign" in the second sentence of Section 10 means that Section 10 permitted, but did not require, Nadirashvili to assign the Settlement Agreement and its rights, obligations, and privileges if she sold, transferred, or assigned the Nadirashvili Patent Portfolio to a third party. (Def.'s Mem. in Support of Motion for Summary Judgment [Doc. No. 144] at 23-24.) In Cardio Flow's view, the language "may assign" is permissive and therefore cannot mean that Nadirashvili "must" or "shall" make such an assignment. (*Id.* at 24.) Cardio Flow contends that the parties used the term "may" in its permissive sense throughout the rest of the Settlement Agreement, so the "may" in Section 10 must be read as permissive to harmonize all of the clauses of the contract. (*Id.*) As such, according to Cardio Flow, Section 10 does not impose an obligation to assign the Settlement Agreement by its plain terms. (*Id.*)

Cardio Flow also argues that Section 10 must be read in conjunction with Section 7 of the Settlement Agreement. (*Id.* at 25.) In relevant part, Section 7 provides that "Nadirashvili may partner (which may include the formation of an entity to own the Nadirashvili Patent Portfolio or the sale of the Nadirashvili Patent Portfolio to a person or entity) with any individual or entity to develop the Nadirashvili Patent Portfolio, including Gary Petrucci." (Settlement Agreement § 7.) According to Cardio Flow, whereas Section 10 broadly governs the assignment of rights, obligations, and privileges under the Settlement Agreement, Section 7 specifically granted Nadirashvili express permission or consent to sell, transfer, or assign the Nadirashvili Patent Portfolio without regard to the remaining terms of the Settlement Agreement. (Def.'s Mem. in Support of Motion for Summary Judgment [Doc. No. 144] at 25.)

Finally, Cardio Flow contends that an interpretation of Section 10 that requires an assignee to agree to be bound by the terms of the Settlement Agreement would encumber Nadirashvili's ownership interest in the patents, which is inconsistent with Section 2 of the Settlement Agreement (*Id.*; *see* Settlement Agreement § 2 (CSI's assignment of patents to Nadirashvili "shall be free of any liens or encumbrances").

CSI urges the Court to adopt an entirely different interpretation of Section 10. It contends that, when considering Section 10 in its entirety, the second sentence of Section 10 must be read to prohibit Nadirashvili from assigning her patents to any third party unless the assignee agrees to be bound by all of the terms of the Settlement Agreement. (Pl.'s Mem. in Op. to Motion for Summary Judgment [Doc. No. 150] at 22.) In CSI's view, the first sentence of Section 10 prohibits the parties from assigning their rights under the

Settlement Agreement, which includes their patent portfolios, without the other party's written consent. (*Id.* at 23.) CSI then reads the second sentence as creating a limited exception to that prohibition on assignment—an exception that allows Nadirashvili to assign her patent portfolio only if the assignee agrees to be bound by all of the terms of the Settlement Agreement. (*Id.* at 23-24.) CSI explains that Section 7 of the Settlement Agreement acknowledges that Nadirashvili could partner with Petrucci or Cardio Flow, but Section 10 assures CSI that Nadirashvili, Petrucci, and Cardio Flow would be required to abide by all of the terms of the Settlement Agreement in the event that occurred. (*Id.* at 22-23.) Finally, CSI argues that the use of "may" in the second sentence of Section 10 means only that Nadirashvili was permitted to assign her patents to another party, and that there was no requirement that she do so. (*Id.* at 24.)

The Court finds that it need not resolve these competing interpretations of Section 10. Even if the Court were to adopt the interpretation of Section 10 urged by CSI, the only possible legal consequence would be that Nadirashvili may have breached the Settlement Agreement by having failed to obtain such prior consent or by having failed to obtain Cardio Flow's agreement in writing, acknowledging that it was bound by the terms of the Settlement Agreement. Stated differently, even in the face of a potential breach by Nadirashvili, no operation of law would render Cardio Flow liable for Nadirashvili's potential breach. Any relief for such a breach could only be sought from Nadirashvili. To be clear though, the Court here does not interpret the language of Section 10 and therefore makes no findings as to any obligations Nadirashvili may have had thereunder and/or whether her obligations, if any, were breached.

13

In light of these rulings, the Court now turns its attention to CSI's arguments that Cardio Flow is nonetheless bound to the terms of the Settlement Agreement by operation of law.

### C. Whether Cardio Flow Is Bound by the Terms of the Settlement Agreement by Operation of Law

CSI argues that, by virtue of the assignment of patent rights from Nadirashvili to Cardio Flow, Cardio Flow is bound by the terms of the Settlement Agreement. If Cardio Flow is not so bound, CSI has no viable breach of contract claim against Cardio Flow. If Cardio Flow is so bound, CSI could maintain a breach of contract claim against Cardio Flow if, of course, CSI also satisfies all other elements necessary to establish such a claim.

Cardio Flow argues that CSI cannot enforce the Settlement Agreement against it because it was not a party to the Settlement Agreement, did not negotiate it, and did not agree to be bound by it. CSI contends that Cardio Flow is bound by the terms of the Settlement Agreement for three reasons: (1) Nadirashvili granted CSI an exclusive license to patent rights in the Nadirashvili Patent Portfolio, and when Nadirashvili assigned the Nadirashvili Patent Portfolio to Cardio Flow, CSI's license "ran with the patents" under federal patent law, thereby binding Cardio Flow to the terms of the Settlement Agreement; (2) Cardio Flow is equitably estopped from denying it is bound by the terms of the Settlement Agreement because it knew of the restriction on assignment in Section 10 of the Settlement Agreement yet accepted the assignment of patent rights without CSI's consent; and (3) Cardio Flow is bound by the terms of the Settlement Agreement because

Nadirashvili acted as Cardio Flow's agent at the time the Settlement Agreement was executed.

### 1. The Impact of CSI's Exclusive License to Certain Patent Rights in the Nadirashvili Patent Portfolio

#### a. The Law

Through Section 3(A) of the Settlement Agreement, Nadirashvili granted to CSI an exclusive license to certain patent rights under the Nadirashvili Patent Portfolio. (*See supra* Section II.B.1) "[A]n exclusive license is a license to practice the patented invention 'accompanied by the patent owner's promise that others shall be excluded from practicing it within the field of use wherein the licensee is given leave.'" *Molon Motor & Coil Corp. v. Nidec Motor Corp.*, 946 F.3d 1354, 1361 (Fed. Cir. 2020) (quoting *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998)). "[A]n exclusive licensee has an interest in the patent sufficient to establish an injury when a third party infringes, akin to an ownership interest." *Id.*

In general, state law governs contract interpretation related to patent ownership or rights under patents, while federal law governs "the validity and terms of an assignment." *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1379 (Fed. Cir. 2009). Federal Circuit law applies "to both substantive and procedural issues 'intimately involved in the substance of enforcement of the patent right.'" *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856 (Fed. Cir. 1999) (quoting *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 428 (Fed. Cir. 1996)). "As such, the effect of patent assignment, as opposed to interpretation of assignment contract terms themselves, is an issue of substantive patent

law and is governed by federal law." *Paice, LLC v. Hyundai Motor Co.*, No. WDQ-12-499, 2014 U.S. Dist. LEXIS 95042, at *9 (D. Md. July 7, 2014) (citing *Sky Techs., LLC*, 576 F.3d at 1379). Therefore, although state law governs interpretation of the Settlement Agreement, Federal Circuit law controls the effect, if any, of an assignment of patent interests.

It is a bedrock principle in patent law that "one cannot convey what one does not own." *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009). Because patent owners can only convey what they own, patent assignees take ownership to patents "subject to the legal encumbrances thereon." *Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1372 (Fed. Cir. 2008) (citing *Worley v. Tobacco Co.*, 104 U.S. 340, 26 L. Ed. 821, 1882 Dec. Comm'r Pat. 109 (1881); *Sanofi, S.A. v. Med-Tech Veterinarian Prods.*, 565 F. Supp. 931 (D.N.J. 1983)); *accord Energy Innovation Co., LLC v. NCR Corp.*, No. 1:18-cv-3919-TCB, 2018 U.S. Dist. LEXIS 223110, at *10 (N.D. Ga. Nov. 29, 2018); *Paice, LLC*, 2014 U.S. Dist. LEXIS 95042, at *32. Indeed, courts have long recognized that "an assignee of a patent takes the patent subject to prior licenses." *Innovus Prime, LLC v. Panasonic Corp. & Panasonic Corp. of N. Am., Inc.*, No. C-12-00660-RMW, 2013 U.S. Dist. LEXIS 93820, at *14 (N.D. Cal. July 2, 2013) (citing *Keystone Type Foundry v. Fastpress Co.*, 272 F. 242, 245 (2d Cir. 1921); *L.L. Brown Paper Co. v. Hydroiloid, Inc.*, 118 F.2d 674, 677 (2d Cir. 1941)).

The Federal Circuit has explained that legal encumbrances involving the right to use the patent "run with the patent." *Datatreasury Corp.*, 522 F.3d at 1372. For example, a covenant not to sue runs with a patent when a party assigns the patent because the covenant

16

is a legal encumbrance involving the right to use the patent. *See Energy Innovation*, 2018 U.S. Dist. LEXIS 223110, at *10. In contrast, procedural terms in an agreement, such as an arbitration clause or a confidentiality provision, do not run with a patent when a party assigns that patent because those terms do not involve the right to use a patent. *See Datatreasury Corp.*, 522 F.3d at 1372-73 (holding that an arbitration clause in a licensing agreement did not run with the patent); *Paice, LLC*, 2014 U.S. Dist. LEXIS 95042, at *33 (holding that a confidentiality provision in a settlement agreement did not run with a patent).

With these principles in mind, the Court now analyzes what happened when CSI and Nadirashvili executed the Settlement Agreement, what happened when Nadirashvili assigned her patent interests to Cardio Flow, and how these two events affect CSI's exclusive license and claim for breach of contract.

### b.      The Effect of the Settlement Agreement

In accordance with the terms of the Settlement Agreement, CSI and Nadirashvili divided the disputed patents and patent applications into two portfolios: the CSI Patent Portfolio and the Nadirashvili Patent Portfolio. CSI assigned any interest it had in the patent interests comprising the Nadirashvili Patent Portfolio to Nadirashvili. (Settlement Agreement § 2(A).) Likewise, Nadirashvili assigned any interest she had in the patent interests comprising the CSI Patent Portfolio to CSI. (*Id.* § 2(B).)

CSI and Nadirashvili also exchanged exclusive licenses. Nadirashvili granted to CSI an exclusive license to certain patent rights under the Nadirashvili Patent Portfolio, and

17

CSI granted to Nadirashvili an exclusive license to certain patent rights under the CSI Patent Portfolio. (*Id.* § 3.)

Accordingly, after CSI and Nadirashvili executed the Settlement Agreement, CSI owned the patent interests comprising the CSI Patent Portfolio, and Nadirashvili owned the patent interests comprising the Nadirashvili Patent Portfolio. CSI's patent interests, however, were encumbered by Nadirashvili's exclusive license under the CSI Patent Portfolio, and likewise, Nadirashvili's interests were encumbered by CSI's exclusive license under the Nadirashvili Patent Portfolio. *See Datatreasury Corp.*, 522 F.3d at 1372-73.

### c. The Effect of Nadirashvili's Assignment to Cardio Flow

After CSI and Nadirashvili executed the Settlement Agreement, Nadirashvili assigned all of her patent interests comprising the Nadirashvili Patent Portfolio to Cardio Flow. (Hall Decl. in Support of Motion for Summary Judgment [Doc. No. 145] Ex. 10.)

Although Nadirashvili owned the Nadirashvili Patent Portfolio, her patent interests were encumbered by the exclusive license that Nadirashvili granted CSI under Section 3(A) of the Settlement Agreement. Therefore, when Nadirashvili assigned her entire interest in the Nadirashvili Patent Portfolio to Cardio Flow, CSI's exclusive license ran with the patents assigned to Cardio Flow. *See Datatreasury Corp.*, 522 F.3d at 1372-73. Indeed, Nadirashvili could not convey her patent interests comprising the Nadirashvili Patent Portfolio to Cardio Flow free of CSI's exclusive license because she could not convey what she did not own. Accordingly, Cardio Flow took the patent interests

18

comprising the Nadirashvili Patent Portfolio subject to CSI's prior, exclusive license. *See id.*

### 2.     CSI's Breach of Contract Claim

Under Minnesota law, a breach of contract claim has four elements: "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir. 2013) (quoting *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 961 (D. Minn. 2000)).

CSI argues that Cardio Flow is bound by the terms of the Settlement Agreement as if it were a signatory to the Settlement Agreement because, citing *Datatreasury Corp.*, Cardio Flow is bound by the exclusive license CSI acquired under the Settlement Agreement. (*See* Am. Compl. [Doc. No. 34] ¶¶ 23, 25; Pl.'s Mem. in Support of Motion for Partial Summary Judgment [Doc. No. 139] at 15-19.) In response, Cardio Flow contends that the terms of the Settlement Agreement cannot be enforced against them because Cardio Flow never agreed to be bound by the terms of the Settlement Agreement. (*See* Def.'s Mem. in Op. to Motion for Partial Summary Judgment [Doc. No. 147] at 16-21.) Moreover, Cardio Flow disputes that they are bound by the terms of the Settlement Agreement by operation of law. (*See id.*)

Under *Datatreasury Corp.*, CSI is correct that its exclusive license ran with the patents that Nadirashvili assigned to Cardio Flow because CSI's exclusive license was a legal encumbrance involving the right to use patents. Therefore, it is correct that CSI could

enforce the exclusive license it acquired through the Settlement Agreement, even though Cardio Flow now owns the patent interests comprising the Nadirashvili Patent Portfolio.

The ruling in *Datatreasury Corp.*, however, does not support a finding that Cardio Flow is bound by the terms of the Settlement Agreement as if it were a party to that agreement. "A settlement agreement is a contract and therefore subject to a contract's requirements." *Ittel v. Pietig*, 705 N.W.2d 203, 207 (Minn. Ct. App. 2005) (citing *Ryan v. Ryan*, 193 N.W.2d 295, 297 (Minn. 1971)). "It goes without saying that a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). "[A]s a general rule, nonparties to a contract acquire no rights or obligations under it." *Woodruff v. 2008 Mercedes*, 831 N.W.2d 9, 14 (Minn. Ct. App. 2013) (quoting *Mon-Ray, Inc. v. Granite Re, Inc.*, 677 N.W.2d 434, 439 (Minn. Ct. App. 2004)). There is no basis in federal patent law that would support a finding that Cardio Flow is a party to the Settlement Agreement—a contract, to which it did not agree to be bound. The fact that CSI's exclusive license ran with Nadirashvili's patent interests, because they legally encumber those interests, does not render Cardio Flow a party to the Settlement Agreement itself. *See also* Andrew C. Michaels, *Patent Transfer and the Bundle of Rights*, 83 Brooklyn L. Rev. 933, 946 (2018) ("while transfer of a patent is generally held not to affect the licensee's privilege to infringe, that does not mean that the entire license agreement runs with the patent").

To understand why Cardio Flow is not bound by the Settlement Agreement, it is important to recognize the distinction between the Settlement Agreement itself and the effect that the Settlement Agreement had on patent rights. Through the Settlement Agreement, CSI and Nadirashvili agreed to encumber the patent interests comprising the

Nadirashvili Patent Portfolio with CSI's exclusive license. The Settlement Agreement itself, however, remains between CSI and Nadirashvili, unless another party agrees to be bound by the Settlement Agreement. Put differently:

> The patent owner, through a license agreement, may diminish the bundle [of patent rights] by exchanging sticks in the bundle for other forms of value, but may not enlarge the in rem bundle. When a patent is transferred, what is transferred is whatever remains in the bundle. The in personam contract, that is, the *license agreement*, remains between the two signatories.

*Id.* at 980 (emphasis in original). Because Cardio Flow is a not a party to the Settlement Agreement, there is no privity of contract between CSI and Cardio Flow, and Cardio Flow cannot breach a contract to which it is not a party.[2]

In sum, federal patent law does not allow CSI to maintain a breach of contract claim against Cardio Flow. The Settlement Agreement does not provide a right to divide the marketplace without regard to patent rights; it is an agreement to exchange exclusive patent licenses. And those licenses, as the Court has ruled, run with the patents. Accordingly, neither Cardio Flow—nor any other third party—may practice any claim of a patent that

---

[2] If Cardio Flow were a party to the Settlement Agreement, CSI is correct that a claim for patent infringement could be addressed in the context of a breach of contract action. The Federal Circuit's decision in *U.S. Valves, Inc. v. Dray* illustrates that point. 212 F.3d 1368 (Fed. Cir. 2000). There, U.S. Valves and Dray executed a license agreement, which granted U.S. Valves a license to several of Dray's patents. *Id.* at 1370. U.S. Valves eventually sued Dray, alleging breach of contract because Dray manufactured and sold valves covered by the license agreement and sought to enjoin Dray from violating U.S. Valves' rights under the licensing agreement. *Id.* at 1371. The district court found that Dray's infringement violated the license agreement. *Id.* The Federal Circuit affirmed the district court's ruling on the breach of contract claim. *Id.* at 1373.

Nadirashvili licensed to CSI in the Nadirashvili Patent Portfolio. Those patent rights could only be enforced against Cardio Flow by way of a patent infringement action.

### 3.     Equitable Estoppel

CSI alternatively argues that Cardio Flow is bound by the Settlement Agreement under the doctrine of equitable estoppel. (*See* Pl.'s Mem. in Support of Motion for Partial Summary Judgment [Doc. No. 139] at 19-24.)

To succeed on an equitable estoppel claim, CSI must prove three elements: "(1) that promises or inducements were made; (2) that it reasonably relied upon the promises; and, (3) that it will be harmed if estoppel is not applied." *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn. 1990). "Estoppel is an equitable doctrine addressed to the discretion of the court and is intended to prevent a party from taking unconscionable advantage of his own wrong by asserting his strict legal rights." *N. Petrochemical Co. v. U. S. Fire Ins. Co.*, 277 N.W.2d 408, 410 (Minn. 1979). Equitable estoppel "estops a party who has full knowledge of the facts from accepting the benefits of a transaction, contract, or order and subsequently taking an inconsistent position to avoid corresponding obligations." *Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 737 (8th Cir. 1987) (citations omitted).

CSI argues that it is undisputed that Cardio Flow knew CSI had an exclusive license when Nadirashvili assigned her patents to Cardio Flow. Moreover, CSI contends that Cardio Flow knew about the requirements of Section 10 of the Settlement Agreement, which, in their view, prohibited Nadirashvili from assigning the patents to a third party, unless the third party "has agreed, in writing promptly delivered to the other party, to be

bound to this Agreement as if it were a party." (Pl.'s Mem. in Support of Motion for Partial Summary Judgment [Doc. No. 139] at 19-20.) Because Cardio Flow voluntarily accepted the benefits of the transaction between CSI and Nadirashvili, according to CSI, Cardio Flow is bound by the resulting obligations. (*Id.*)

Cardio Flow counters first that CSI did not adequately plead equitable estoppel, so it cannot receive affirmative relief on this theory. (Def.'s Mem. in Op. to Motion for Partial Summary Judgment [Doc. No. 147] at 23 (citing Am. Compl. [Doc. No. 34]).) Second, Cardio Flow argues there is no legal or factual basis for equitable estoppel in the record.

Although the parties dispute what pleading standard applies to a claim for equitable estoppel, it is clear that CSI did not adequately plead equitable estoppel under any pleading standard. (*See* Am. Compl. [Doc. No. 34].) CSI's Amended Complaint does not even mention "equitable estoppel," or even the word "estop." (*See id.*) On that basis alone, it is precluded from seeking such relief.

Even if CSI had adequately plead equitable estoppel, CSI neither identifies any promise or inducement, nor factual evidence in the record that Cardio Flow knowingly accepted the benefits of any such promise or inducement and took an inconsistent position to avoid corresponding obligations. Also, CSI offers no evidence that it reasonably relied on that promise or inducement and points to no evidence of harm. (*See* Pl.'s Mem. in Support of Motion for Partial Summary Judgment [Doc. No. 139] at 22-23.)

Moreover, CSI identifies no genuine issue of material fact in dispute to defeat Cardio Flow's motion. The only evidence CSI cites in support of its claim for equitable estoppel is: (1) Petrucci's testimony that he introduced Nadirashvili to attorneys at the Fish

& Richardson law firm for the purpose of helping her resolve ownership to certain patent interests; (2) Petrucci's testimony that he relied on a lawyer at the Fish & Richardson law firm to advise him about certain sections of the Settlement Agreement; and (3) testimony from counsel at the Fish & Richardson law firm, who helped negotiate the Settlement Agreement, that the exclusive licenses exchanged under Section 3 "would be subsumed under the rights, obligations and privileges" of Section 10 of the Settlement Agreement. (*See* Allender Decl. in Support of Motion for Partial Summary Judgment [Doc. No. 140] Ex. F, Petrucci Dep. at 28:24-29:7, 186:21-187:22 & Ex. E Kane Dep. at 51:5-53:18.) Even had equitable estoppel been adequately plead, which it was not, this record evidence is simply insufficient to support such a claim.

### 4.    Agency Principles

CSI's final argument on the issue of privity of contract is that Nadirashvili signed the Settlement Agreement as Cardio Flow's agent, so Cardio Flow is bound by it.

A partnership agreement or joint venture relationship can arise out of "agreements between parties to combine their money, skill and efforts towards the accomplishment of a mutually profitable enterprise." *Seaboard Sur. Co. v. H & R Const. Corp.*, 153 F. Supp. 641, 646 (D. Minn. 1957). "The existence of a joint venture is ordinarily an issue of fact." *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 389 (Minn. Ct. App. 2004). "But where no competent evidence will support a finding of joint venture, the district court may decide the issue as a matter of law." *Id.* "[A] joint venture ... generally arises when necessary to impute negligence between two entities that otherwise have no legal relationship." *Trustees of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v.*

*Bjorkedal*, 516 F.3d 719, 729 (8th Cir. 2008) (quoting *Stelling v. Hanson Silo Co.*, 563 N.W.2d 286, 290-91 (Minn. Ct. App. 1997)).

CSI argues that a jury could reasonably find that, at the time Nadirashvili entered into the Settlement Agreement, she was acting in a partnership with Petrucci. CSI contends that Cardio Flow was their joint venture on the basis of Petrucci's testimony that he left CSI to form a partnership with Nadirashvili, and that their mutual goal was to exploit the patents she inherited from Dr. Shturman. Moreover, CSI notes that Petrucci himself described their relationship as a partnership.[3] CSI also notes that Section 7 of the Settlement Agreement specifically authorized Nadirashvili to "partner" with Mr. Petrucci. Additionally, CSI argues that an agency relationship existed at that time because the record evidence demonstrates that Petrucci exercised close control over Nadirashvili during the 2012 settlement negotiations and at the time she signed the Settlement Agreement. *See A. Gay Jenson Farms Co. v. Cargill, Inc.*, 309 N.W.2d 285, 290-93 (Minn. 1981) (holding that a corporate creditor who assumed significant control over a debtor's business created

---

[3] The record evidence does not support CSI's claim that Petrucci described their relationship as a partnership at the time Nadirashvili executed the Settlement Agreement. When asked "What was the connection between the starting of Cardio Flow and the end of that litigation between [Nadirashvili] and CSI?", Petrucci replied: "Well, in the – in the litigation – in the settlement agreement they specifically said she could partner with anybody she wanted to, including Gary Petrucci." (Allender Decl. in Support of Motion for Partial Summary Judgment [Doc. No. 140] Ex. F, Petrucci Dep. at 13:4-10.)

Rather, he described himself as her partner after the assignment of her patent rights. When asked "So you became a partner of [Nadirashvili's] when you acquired the patent rights?", Petrucci replied: "That's correct." (Sealed Allender Decl. in Op. to Motion for Summary Judgment [Doc. No. 152] Ex. S, Petrucci Dep. at 180:25-181:16.)

an agency relationship with the debtor that supported a jury verdict holding the creditor liable for the debts of the debtor).

Cardio Flow argues that CSI's joint venture theory is contrary to Minnesota law, emphasizing that a joint venture cannot apply to the relationship between a corporation and its shareholders. Moreover, Cardio Flow contends that Nadirashvili did not enter into the Settlement Agreement as an agent for Cardio Flow because: (1) Cardio Flow was not a party to the Settlement Agreement; and (2) CSI cites no evidence that Nadirashvili had actual or apparent authority to bind Cardio Flow. Finally, Cardio Flow contends that the record plainly fails to support CSI's argument that, under *Cargill, Inc.*, Cardio Flow exercised such close control over Nadirashvili's affairs so as to render Cardio Flow subject to the terms of the contracts to which she was a signatory.

Here, agency principles do not bind Cardio Flow to the Settlement Agreement. First, Cardio Flow is correct that joint venture principles do not apply because Cardio Flow is a corporation that was created in 2010 and in which Nadirashvili and Petrucci own shares. *See Rehnberg v. Minnesota Homes, Inc.*, 52 N.W.2d 454, 456 (Minn. 1952) (joint venture assumes "corporation has not been organized"); *Stelling v. Hanson Silo Co.*, 563 N.W.2d 286, 290-91 (Minn. Ct. App. 1997) (no joint venture because corporation and shareholder already had legal relationship). Moreover, the record evidence that CSI identifies does not support a finding that Nadirashvili and Petrucci were in a partnership at the time Nadirashvili executed the Settlement Agreement.

Additionally, CSI does not identify any record evidence suggesting that Nadirashvili had actual or apparent authority to bind Cardio Flow when she signed the Settlement

26

Agreement. Finally, *Cargill, Inc.* is not analogous to this case. *Cargill, Inc.* involved a corporate creditor that, among other things, took control of a debtor's business, financed the debtor's purchases, held rights to enter the debtor's property, and could prevent the debtor from entering into certain contracts. 309 N.W.2d at 290-91. CSI, however, identifies no evidence that Petrucci or Cardio Flow exercised such control over Nadirashvili. Indeed, Petrucci's deposition testimony fails to demonstrate that Petrucci exercised close control over Nadirashvili. (*See* Order Denying Motion to Alter/Amend/Supplement Pleadings [Doc. No. 121] at 7-8 n.2, *aff'd* Order Denying Appeal/Objection of Magistrate Judge Decision [Doc. No. 131] (Petrucci's deposition transcript "does not paint him as a 'puppet master guiding the 2012 litigation' as CSI alleges").) Accordingly, agency principles do not create privity of contract here and hence do not preclude the entry of summary judgment on behalf of Cardio Flow.

In sum, Cardio Flow is not bound by the Settlement Agreement under federal patent law, equitable estoppel, or agency principles. Because CSI has provided no legal basis for binding Cardio Flow to the terms of the Settlement Agreement, CSI's breach of contract claim must be dismissed.

### D.  Claim for Injunctive Relief

CSI's claim for injunctive relief seeks to enjoin Cardio Flow from developing or using solid counterweights in the future in breach of the Settlement Agreement and from filing any new application or prosecuting any existing application that practices or constructively practices solid counterweights. (*See* Am. Compl. [Doc. No. 34] ¶¶ 35-38; Pl.'s Mem. in Op. to Motion for Summary Judgment [Doc. No. 150] at 4.)

CSI's claim for injunctive relief, however, is wholly premised on its argument that it received an "exclusive right" to practice solid counterweights, without regard to patent rights, in Section 3(A) of the Settlement Agreement. (*See* Am. Compl. [Doc. No. 34] ¶¶ 37-38.) As discussed above, however, Section 3(A) grants no such exclusive right. CSI's "exclusive right and license" was merely an exclusive license, and therefore, the Court cannot enjoin Cardio Flow in the ways CSI seeks. Accordingly, CSI's claim for injunctive relief is dismissed.

### E.  Claim for Declaratory Relief

CSI's claim for declaratory relief seeks a declaration that CSI is the owner of a list of patents that incorporate counterweights that Cardio Flow claims to own. (*See* Am. Compl. [Doc. No. 34] ¶¶ 28-34; Pl.'s Mem. in Op. to Motion for Summary Judgment [Doc. No. 150] at 4-5.) CSI's position is that it owns these patents by virtue of an arbitration award and several agreements that predate the Settlement Agreement. (*See* Am. Compl. [Doc. No. 34] ¶ 19.) According to CSI, Dr. Shturman invented some of these patents, and they were erroneously omitted from the schedules of patent interests attached to the Settlement Agreement. (Pl.'s Mem. in Op. to Motion for Summary Judgment [Doc. No. 150] at 4-5.) CSI contends that the rest of the patent interests were developed by Cardio Flow after the Settlement Agreement was executed but belong to CSI because they constructively practice solid counterweights in violation of CSI's exclusive right. (*Id.*)

According to Cardio Flow, CSI's claim must be dismissed because CSI is seeking a declaration that Cardio Flow must assign patents and applications that are by definition

not part of the Nadirashvili Patent Portfolio, not part of the Settlement Agreement, or invented by other inventors altogether.

The Court cannot issue a declaratory judgment here. Section 3(A) only provides a license to patent rights under the Nadirashvili Patent Portfolio; it does not grant CSI an exclusive right to practice solid counterweights in general, does not restrict patent prosecution, and does not mention assigning patent applications. (Settlement Agreement § 3.) In fact, the Settlement Agreement authorized Nadirashvili to "prosecute the Nadirashvili Patent Portfolio as she sees fit." (*Id.* § 4.) Additionally, although CSI argues that some patents were "erroneously omitted" from the Settlement Agreement, it identifies no evidence that any patents were erroneously omitted, and in any event, did not plead such a theory of mistake with particularity, as Rule 9(b) requires. (*See* Fed. R. Civ. P. 9(b); Pl.'s Mem. in Op. to Motion for Summary Judgment [Doc. No. 150] at 10.) Moreover, the Court cannot compel Cardio Flow to assign patents to CSI based on agreements and an arbitration award involving Shturman, Shturman's company, and CSI that predate the Settlement Agreement when Cardio Flow was not a party to those agreements or arbitration and where CSI released any claim it "may have or claim to have, related to claims and counterclaims asserted in the [2012] Lawsuit." (Settlement Agreement § 11; *see* Hall Decl. in Support of Motion for Summary Judgment [Doc. No. 145] Ex. 6, First Amended Complaint from *Nadirashvili v. Cardiovascular Systems, Inc.*, Case No. 12-cv-00616 (SRN/FLN).)

As a result, the Court dismisses CSI's claim for declaratory relief.

### F.  Motions to Strike and for Sanctions

Cardio Flow has filed two motions to strike and for sanctions. Cardio Flow's first motion to strike seeks to exclude as untimely the infringement contentions in the declaration of CSI's expert that was filed with CSI's memorandum in opposition to Cardio Flow's motion for summary judgment. Cardio Flow's second motion to strike seeks to exclude as untimely certain of CSI's case theories regarding breach.

The Court, however, need not rule on Cardio Flow's motions to strike because CSI has no viable breach of contract claim. Accordingly, Cardio Flow's motions to strike are dismissed as moot.

Cardio Flow also requested the Court to impose sanctions on CSI. The Court declines to exercise its discretion to impose any sanctions. Accordingly, Cardio Flow's motions for sanctions are denied.

### III.   CONCLUSION

Based on the foregoing, and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion for Partial Summary Judgment [Doc. No. 137] is **DENIED**;

2.  Defendant's Motion for Summary Judgment [Doc. No. 142] is **GRANTED**;

3.  Defendant's Motion to Strike and For Sanctions [Doc. No. 161] is **DENIED as moot in part** and **DENIED in part**;

4.  Defendant's Motion to Strike and For Sanctions [Doc. No. 193] is **DENIED as moot in part** and **DENIED in part**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: November 2, 2020                        s/Susan Richard Nelson
                                               SUSAN RICHARD NELSON
                                               United States District Judge